UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN VAUGHAN,

                        Petitioner,

       vs.

                                          9:05-CV-1323

WILLIAM LAPE, Superintendent of         (J. Hurd)
Marcy Correctional Facility

                       Respondent.
_____


STEPHEN VAUGHAN, Petitioner Pro Se
LUKE MARTLAND, Assistant Attorney General of the State of New York
MALANCHA CHANDA, Assistant Attorney General of the State of New York

GUSTAVE J. DIBIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In this application, petitioner is challenging the sentence he received on June 20, 2000, after entering a plea of guilty to Burglary, First Degree in Onondaga County Supreme Court. Petitioner was sentenced to a determinate term of seven and one-half years, together with five years of supervised release.

Petitioner did not file a direct appeal from his sentence and conviction because he waived his right to appeal as part of his plea agreement. However, on February

12, 2003, petitioner made a motion to set aside his sentence in Onondaga County Supreme Court pursuant to N.Y. CRIM. PROC. LAW Section 440.20, claiming that his pre-sentence report contained inaccurate information.  This motion was denied on April 3, 2003.

Petitioner appealed the denial of his Section 440.20 motion to the Appellate Division, Fourth Department.  Although the Appellate Division granted petitioner leave to appeal, his appeal was subsequently denied on July 1, 2005.  *People v. Vaughan*, 20 A.D.3d 940, 798 N.Y.S.2d 289 (4th Dept. 2005).  On September 30, 2005, petitioner's motion for reargument in the Fourth Department was denied, and the Court of Appeals denied petitioner's motion for leave to appeal on October 3, 2005.  *People v. Vaughan*, 21 A.D. 3d 1442, 801 N.Y.S. 2d 555 (4th Dept. 2005); *People v. Vaughan*, 5 N.Y.3d 857, 840 N.E.2d 146 (2005).

Petitioner raises a single ground in support of his petition:

1.    The prosecution's failure to provide petitioner or his counsel with the pre-sentence report at least one day prior to sentencing constitutes a violation of the Fourteenth Amendment.

Respondent has filed a motion to dismiss the petition, with a memorandum of law and the pertinent state court records.  (Dkt. No. 6).  For the following reasons, the court recommends granting respondent's motion to dismiss the petition.

**DISCUSSION**

1.  <u>Facts</u>

On January 23, 2000, petitioner went to his ex-girlfriend's house in Minoa, New York. The ex-girlfriend was not at home, and petitioner entered the house over the objection of her roommate. The roommate explained that the ex-girlfriend was at work. Petitioner entered the house, removed a twelve-gauge shotgun from a gun cabinet, loaded the gun with shotgun shells from his coat pocket, and sat down. Petitioner stated that he would shoot his ex-girlfriend, and then kill himself. The roommate alerted the police, and petitioner was arrested. The roommate gave a statement to police shortly after the January 2000 incident in which she said that "[h]e did not point the gun at me, but I felt threatened when he said that I could not leave." (Exhibit C to Petitioner's Memorandum of Law, included at Dkt. No. 1). During the incident, "[t]he shotgun was on his lap and was pointing right at me." *Id*.

Petitioner was charged by Superior Court Information with Burglary, First Degree; Criminal Use of a Firearm, First Degree; Criminal Possession of a Weapon, Second Degree; Unlawful Imprisonment, First Degree; Reckless Endangerment, First Degree; and Criminal Contempt, Second Degree. Petitioner pleaded guilty to Burglary, First Degree in Onondaga County Supreme Court on June 2, 2000. At his plea, petitioner was represented by Attorney Kenneth Moynihan from the Hiscock Legal Aid Society. At the plea hearing, during a discussion of the negotiated seven

and one-half years determinate sentence, defense counsel argued that the period of petitioner's post-release supervision should be shortened, and the judge should   ". . . rely on the presentence report and the CCA report . . . ." (p. 3 of Transcript Plea Hearing, included as Exhibit A to Petitioner's Memorandum of Law, Dkt. No. 1 ("Plea Transcript")).  Attorney Moynihan characterized the length of time of post-incarceration supervised release as "the major issue." (p. 2, Plea Transcript).  The judge stated that he did not anticipate shortening the period of supervised release, but that he would consider the request.  *Id*.

During the plea colloquy, petitioner waived a number of rights, including the right to have his case presented to a grand jury, as well as his right to appear and testify in front of the grand jury.  He agreed to be charged with Burglary, First Degree, and waived his right to a jury trial, his right to confront, cross examine, and question witnesses on his behalf, and his right to testify.  Petitioner acknowledged that he understood he was pleading guilty to a felony, and waived his right to appeal "any mistakes or errors or omissions made in this court." *Id*. at 3.  Petitioner admitted that he

> knowingly entered or remained unlawfully in a dwelling with the intent
> to commit a crime therein.  And when in effecting entry or while in the
> dwelling or immediate flight therefrom, [he] or another participant in the
> crime was armed with an explosive or a deadly weapon, to wit: a loaded
> 12 gauge shotgun.

*Id*. at 9.  He then pleaded guilty to Burglary, First Degree.  *Id*.

4

In the two weeks between petitioner's plea and sentencing, the Onondaga County Probation Department prepared a pre-sentence report for petitioner's sentencing.[1]  At the sentencing on June 20, 2000, petitioner was represented by Attorney Robert Wells, who was substituting for Attorney Moynihan.  Petitioner claims that neither he nor Attorney Wells were provided with the report prior to sentencing.  Respondent admits that "[t]he presentence report contains a factual inaccuracy."  (Dkt. No. 6, p. 2, fn 2).

The pre-sentence report indicates that when the roommate told petitioner that she needed to go to work, "he pointed the gun at her and told her she could not leave yet . . . .  He then sat in a rocking chair nearby, holding the gun, and point[ed] it at [the roommate]."  (Exhibit B to Petitioner's Memorandum of Law, p. 2, included at Dkt. No. 1).  The roommate's actual statement was that petitioner did ***not*** point the gun at her, but that she felt threatened when he told her she could not leave.  ***After*** he sat down, the gun was on petitioner's lap and was "pointing right at [her]."  (Exhibit C to Petitioner's Memorandum of Law, included at Dkt. No. 1).

Petitioner did not object to the factual inconsistency in the pre-sentence report at the time of sentencing.  At the sentencing hearing, the judge stated, "I've ordered a presentence investigation.  I've reviewed it."  (p. 2 of Sentencing Hearing Transcript, included as Exhibit I to Petitioner's Memorandum of Law ("Sentencing

---

[1]Probation Officer Marylou Goudy and Probation Officer Donald R. Anguish signed the report on June 15, 2000.

Transcript")).  That single statement was the only mention of the pre-sentence report at the sentencing hearing.  It is unclear whether the pre-sentence report was given to Attorney Moynihan before the sentencing.  At sentencing, petitioner did not ask for the pre-sentence report.

Attorney Wells renewed the request that the court consider a shorter period of supervised release.  The judge denied the request, and stated, "given the nature of the offense and history of the defendant, I see no reason to shorten up supervised release."  (Sentencing Transcript, p. 3).

Petitioner states that in March of 2002 he was involved in family court proceedings in the State of Washington.[2]  At that time, petitioner claims that he became aware, for the first time, of the factual inconsistencies in the pre-sentence report when it was provided to him at that time.  Petitioner states that he attempted to have the mistake corrected in the months following his discovery of the factual inconsistencies, but was unsuccessful.[3]

In February 2003, petitioner filed a motion seeking resentencing in Onondaga

---

[2]No documents have been included in the record that relate to the family court proceedings in Washington.  It is not clear what kind of proceeding occurred, if petitioner was physically present for any part of it, or why the pre-sentence report was relevant.

[3]Petitioner's alleged attempts to correct the information included contacting the sentencing judge and the Inmate Records Coordinator at his facility.  When he was unable to correct the pre-sentence report through those channels, he claims that he advised the sentencing court in August 2002 that he would file a N.Y. CRIM. PROC. LAW Section 440 motion, but needed the transcripts of his plea and sentencing hearings.  Between August and December 15, 2002, petitioner states that he wrote to the Court Reporter and the sentencing court several times to request the transcripts, and received them on December 15, 2002.

County Supreme Court pursuant to N.Y. CRIM. PROC. § 440.20.  The motion was denied on April 3, 2003.  Later that month, petitioner sought leave to appeal to the Appellate Division, Fourth Department, and in July 2003 he was granted leave to appeal.  (Order of July 17, 2003, KA 03-01065, included as Exhibit F in the State Records).  The Appellate Division denied petitioner's appeal on July 1, 2005. *People v. Vaughan*, 20 A.D.3d 940, 798 N.Y.S.2d 289 (4th Dept. 2005).  Petitioner filed a motion for reargument in the Appellate Division in July of 2005 (Exhibit L in the State Records), and one week later filed a motion for leave to appeal to the New York Court of Appeals, requesting a stay until the motion for reargument was resolved in the Appellate Division (Exhibit K in the State Records).  The Appellate Division denied petitioner's motion for reargument on September 30, 2005, and the Court of Appeals denied his motion for leave to appeal on October 3, 2005.  *People v. Vaughan*, 21 A.D. 3d 1442, 801 N.Y.S. 2d 555 (4th Dept. 2005); *People v. Vaughan*, 5 N.Y.3d 857, 840 N.E.2d 146 (2005).  Petitioner filed this petition for a writ of habeas corpus on October 21, 2005.

## 2.  <u>AEDPA Statute of Limitations</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one year period of limitation on habeas corpus petitions that runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute provides for tolling of the limitation period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

In certain exceptional circumstances, equitable tolling is also available.  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).  With this standard in mind, this court will proceed to consider when this petitioner's one year statute of limitations began to run, whether the statute had run at the time he filed his habeas petition, and whether petitioner was entitled to any type of statutory or equitable tolling of the statute.

## A.  Commencement of the one year period pursuant to 28 U.S.C. § 2244 (d)(1)(A).

The first question that the court must answer is when did the one year statute begin to run.  Section 2244 (d)(1)(A) requires the court to examine when petitioner's judgment became "final."  Petitioner in this case did ***not*** file a direct appeal of his sentence and conviction because he waived his right to do so.  Thus, rather than

8

examining the case from the "conclusion of direct review," the court will consider that the statute of limitations began to run from the "expiration of the time for seeking such review."

In New York, a defendant has thirty days after the "imposition of the sentence" to notify the court that he will appeal. N.Y. C.P.L. § 460.10 (1)(a). Generally, the one year limitations period begins to run when the defendant's "time for filing a notice of appeal from his judgment of conviction expire[s]." *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002). *See also, Allen v. Hardy*, 478 U.S. 255, 258 n. 1 (1986)(decision becomes final "where the availability of appeal [is] exhausted . . .."). Petitioner was sentenced on June 20, 2000. Thus, petitioner's conviction became final on July 20, 2000, and the one year statute of limitations began to run at that time. The statute of limitations under Subsection (A) of the AEDPA ***expired July 20, 2001***.

Petitioner's N.Y. CRIM. PROC. LAW Section 440 motion was not filed until February 12, 2003, almost ***twenty months*** after the expiration of the statute of limitations; thus this collateral motion would not act to toll the statute. The petition in this action was filed with the court on October 21, 2005, over four years after the expiration of the statute of limitations. Thus, if the statute of limitations began to run under Section 2244 (d)(1)(A), this petition is untimely. Subsections (B) and (C) of Section 2244 are plainly inapplicable, and need not be addressed. Petitioner argues,

however, that his petition is timely because his one year statute of limitations began to run later, under subsection (D).  (Dkt. No. 1, Petitioner's Memorandum of Law, at p. 4).

**B.  Commencement of the one year period under 28 U.S.C. § 2244(d)(1)(D)**

The statute allows the limitations period to begin running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  Petitioner argues that because the pre-sentence report allegedly was not disclosed to him at sentencing, the statute of limitations should not begin to run until petitioner became aware of the factual inconsistencies in the pre-sentence report in March 2002, pursuant to 28 U.S.C. § 2244(d)(1)(D).  (Dkt. No. 1, Petitioner's Memorandum of Law at p. 5).  Petitioner states that because he waived his right to appeal, and because he "did not possess a factual basis for the need of the pre-sentence report as required for release under state law," he did not attempt to obtain the pre-sentence report prior to March 2002.  In March 2002, the family court proceedings in Washington concluded, at which time petitioner claims he was first provided with a copy of the pre-sentence report, and discovered the errors in the report.

The Second Circuit has emphasized that the standard is when the relevant facts *could have* been discovered, "regardless of whether petitioner actually discovers the

relevant facts at a later date."[4]  *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000).  "In other words, 'when evidence is newly obtained, but could have been obtained earlier [through the exercise of due diligence], the date when the evidence was actually obtained has no effect on the AEDPA limitation period."  *Adams v. Greiner*, 272 F. Supp. 2d 269, 274 (S.D.N.Y. 2003), *quoting Duamutef v. Mazzuca*, 2002 U.S. Dist. LEXIS 4213, at *9 (S.D.N.Y. 2002).  While "the statute does not require the maximum feasible diligence, but, rather, only reasonable diligence," the petitioner must "reasonably pursu[e] discovering all relevant evidence concerning his defense."  *Perez v. United States*, 2006 U.S. Dist. LEXIS 60111, *8-*9 (N.D.N.Y. August 15, 2006), *citing Wims v. United States*, 225 F.3d 186 at 190.

Here, the factual inconsistencies had been present in the pre-sentence report since its completion in June 2000.  Due diligence required that petitioner or his counsel take notice of the Probation Department's mistakes at that time, and if they were not provided with a copy of the pre-sentence report, to request that it be provided for review.  That petitioner allegedly did  not believe that he could obtain the report in the nearly two years after he was convicted before he "discovered" the inconsistencies is irrelevant; he had a right to review it, and should have reviewed it,

---

[4]*Wims v. United States* was a habeas corpus case brought under 28 U.S.C. § 2255.  The statute of limitations appears in the statute itself, and has exactly the same language as the language of 28 U.S.C. § 2244(d)(1)(D).

at sentencing.[5]  The sentencing judge clearly stated that was taking into consideration the defendant's *history*.  This information came from the pre-sentence report.

Due diligence required petitioner to "pursue all relevant evidence concerning his defense." *Perez*, 2006 U.S. Dist. LEXIS 60111, *9.  If petitioner is correct that he was, in fact, not provided with the pre-sentence report prior to sentencing, petitioner essentially missed the window of time during which the report was available to him for review and correction.  Because the factual predicate for petitioner's claim could have been discovered prior to March 2002 (when he claims to have actually discovered the mistakes), the exception provided by 28 U.S.C. § 2244(d)(1)(D) is not available to petitioner.

### 3.  Equitable Tolling

Petitioner also seeks equitable tolling of two time periods within the months intervening between his discovery of the factual inconsistencies and his eventual

---

[5]Although unnecessary to the decision in this case, the court notes that it is unclear what relevance the factual inconsistences bring to bear on petitioner's sentence.  Presumably, because petitioner had a negotiated determinate sentence (negotiated before the preparation of the pre-sentence report), the inconsistencies could only impact the period of post-incarceration supervised release.  Here, the judge stated his disinclination for shortening that period at the plea hearing, *before* the preparation of the report, at petitioner's plea hearing.  It is unclear whether the pre-sentence report had any impact on the sentence other than to confirm the trial judge's original belief about the period of supervised release.  That the incarceration portion and the post-incarceration portions of the sentence remained the same before and after the preparation of the pre-sentence report indicates that the sentencing judge, while relying on the pre-sentence report, did not find any information in the report that would lead him to change his consideration of the factors in making his sentencing determination in the two weeks between the plea and sentencing hearings.  Furthermore, in light of the factual inconsistency, the sentencing judge denied petitioner's motion for resentencing.

motion for resentencing in Onondaga County Supreme Court.  It is unclear exactly which time periods petitioner refers to in his Memorandum of Law.  The first time period petitioner requests be equitably tolled is "for approximately thirty days" around July 2002, during the time period when petitioner attempted to correct the pre-sentence report with the Inmate Records Coordinator where he was incarcerated.  (Petitioner's Memorandum of Law, at p. 5, Dkt. No. 1).  It is the court's understanding that the second time period that petitioner requests be equitably tolled is from August 2002, when petitioner contacted the sentencing court to request his plea and sentencing transcripts, until December 2002, when petitioner eventually received the requested transcripts.  (Memo of Law, at p. 6).

In *Smith v. McGinnis*, the Second Circuit held that AEDPA's one year statute of limitations is not a jurisdictional bar, and may, therefore, be equitably tolled.  *Smith*, 208 F.3d at 17.  However, "equitable tolling applies only in the 'rare and exceptional circumstance.'" *Smith*, 208 F. 3d at 17 (*internal citations omitted*).  Additionally, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll."  *Id*.  In another case, the Second Circuit noted the very limited contexts in which it had found "rare and exceptional" circumstances, such as "where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary," and "where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers."

13

*Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004), *referring to Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003) and *Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000).

In this case, both of the time periods that petitioner requests be equitably tolled occurred ***after*** the statute of limitations period had run.  Petitioner took no action during the limitations period.  It is therefore irrelevant whether there are additional periods of time ***after the limitations period*** that could be equitably tolled.  Thus, no period of equitable tolling applies, and this petition may be dismissed as time barred.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that respondent's motion to dismiss (Dkt. No. 6) be **GRANTED**, and **RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 2, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

14